Dear Mr. Napper:
You requested the opinion of this office concerning the Julius C. Hatcher Reversionary Trust. As you advised, on July 1, 1985, aCompromise of Judgment Claim (the "Compromise") was entered into by and between Julius Carnell Hatcher, et al., and the State of Louisiana and the Department of Transportation and Development, to settle a lawsuit between the parties.
Following are relevant provisions of the Compromise:
 "2. A reversionary medical trust shall be established for the benefit of Julius Carnell Hatcher with a payment of ONE MILLION AND No/100 ($1,000.000.) DOLLARS ("the corpus") in cash by the State of Louisiana to the Trustee of said Trust and in accordance with the terms and provisions of the trust established, a copy of which is attached hereto and incorporated by reference in this "Compromise of Judgment Claim" as is fully set forth herein. The payments from the Trust are to be distributed to or for the benefit of Julius Carnell Hatcher, Beneficiary, for all of his necessary and reasonable medical expenses as defined within the trust agreement attached and that upon the death of Julius Carnell Hatcher and the payment of reasonable funeral expenses, the trust shall be liquidated and after payment of any fees or amounts due to the Trustee and administrator, the entire corpus and its earnings not to exceed SEVEN HUNDRED FIFTY THOUSAND AND No/100 ($750,000.00) DOLLARS shall revert to and be payable to the heirs, assigns, or estate of Julius Carnell Hatcher. Any and all amounts above SEVEN HUNDRED FIFTY THOUSAND AND No/100 ($750,000.00) DOLLARS remaining in the Trust upon dissolution from whatever source shall revert to the State of Louisiana."
 "3. An amount of ONE MILLION AND No/100 ($1,000,000.00) DOLLARS shall be appropriated to the Treasury of the State of Louisiana for the purpose of supplementing the "reversionary medical trust," above mentioned, for the benefit of Julius Carnell Hatcher. The funds so appropriated may be invested by the State Treasurer as other state funds with all fruits, earnings or interest enuring for the benefit of the State of Louisiana."
 "On the fifth, tenth, fifteenth, twentieth and twenty-third anniversary of the establishment of the reversionary medical trust, an amount sufficient to return the Trust to the amount of SEVEN HUNDRED FIFTY THOUSAND AND No/100 ($750,000.00) DOLLARS shall be expended by the State of Louisiana through the Treasurer and paid to the Trustee for deposit in the reversionary medical trust should the combined corpus and earnings of the reversionary medical trust, established for Julius Carnell Hatcher, be below the amount of FIVE HUNDRED THOUSAND AND No/100 ($500,000.00) DOLLARS; provided that the obligation undertaken to supplement the Trust shall terminate upon the death of Julius Carnell Hatcher or the depletion of the sum of ONE MILLION AND No/100 ($1,000,000.00) DOLLARS placed within the fund to supplement the "reversionary medical trust." Upon dissolution of the Trust any amounts remaining in this supplemental fund shall revert to the General Fund of the State of Louisiana."
Act 436 of the Regular Session of 1985 of the Louisiana Legislature contains the following pertinent section, to-wit:
 "Section 8. The sum of Four Million Three Hundred Thousand and No/100 ($4,400,000.00) Dollars, or so much thereof as may be necessary, is hereby appropriated out of the General Fund of the State of Louisiana to be used to pay the compromise judgment claim in the suit entitled `Julius Carnell Hatcher versus The Department of Transportation and Development of the State of Louisiana, Et Al., of Louisiana, Louisiana Department of Transportation and Development" bearing Number 77,383-2 on the docket of the Twenty-Seventh Judicial District for the parish of St. Landry, State of Louisiana. The above total is to be distributed to the following persons or entities subject to the terms and conditions provided for in the compromise of judgments agreement entered into by the State of Louisiana.
 (A). The sum of Two Million and No/100 ($2,000,000.00) Dollars to Julius Carnell Hatcher.
 (B). The sum of Three Hundred Thousand and No/100 ($300,000.00) Dollars, or so much thereof as may be necessary, to the Division of Administration, Office of Risk Management, for the purchase of insurance annuity contracts in favor of Julius Carnell Hatcher.
 (C). To the Attorney General of the Louisiana Department of Justice, the sum of One Million and No/100 ($1,000,000.00) Dollars for the establishment of a reversionary trust with the Maryland National Bank for the benefit of Julius Carnell Hatcher.
 (D). To the Treasury of the State of Louisiana, the sum of One Million and No/100 ($1,000,000.00) Dollars for deposit in a special fund for supplementing the reversionary medical trust established above."
The Trust Agreement was entered into on July 31, 1985, by and between the State of Louisiana, as Grantor, and Maryland National Bank, as Trustee, with Julius Carnell Hatcher as the Beneficiary thereof. Section 8 of Article II, Duties of the Trustee, of the Trust provides as follows, to-wit:
 "8. Distributions. Upon dissolution of this Trust, the balance of trust funds shall be paid, pursuant to written instructions of the State of Louisiana, represented by the Attorney General, which provide, among other things, that all sums, corpus and interest, on deposit at date of dissolution, up to SEVEN HUNDRED FIFTY THOUSAND No/100 ($750,000.00) DOLLARS shall be paid to the heirs, assigns, estate, designee, or legal representative of Julius Carnell Hatcher, within ninety (90) days, and the balance of the trust (the sum on hand in excess of $750,000.00) shall be paid to the Treasurer of the State of Louisiana through the Civil Division, Louisiana Department of Justice, Baton Rouge, Louisiana, absolutely and free of any trust."
Among other provisions of Section 2 of Article VII, Accounting, of the Trust, are the following which are pertinent hereto, to-with:
 "Within thirty days of the date of the fifth year, tenth year, fifteenth year, twentieth year, and twenty-third year anniversaries of the establishment of this Trust, Trustee shall, in writing, advise the Grantor and Beneficiary or his duly appointed guardian of the exact dollar amount of funds of any nature with the Trust. In the event such funds are below one-half million, then, in that event, grantor shall [sic] deposit a sum sufficient to replenish said Trust to a level of $750,000.00.
 Within ninety days of the date of the fifth year, tenth year, fifteenth year, twentieth year, and twenty-third anniversaries of the establishment of this Trust, Trustee shall accept any cash payments into the Trust that Grantor may be obligated to make pursuant to agreement between Grantor and Beneficiary ("Compromise of Judgment Claim").
 If [sic] Grantor is obligated to make an additional cash payment into the Trust within ninety days of the date of the fifth year, tenth year, twentieth year, and twenty-third anniversaries of the establishment of the Trust, pursuant to agreement between Grantor and Beneficiary ("Compromise of Judgment Claim"), then the amount of such cash payment(s) to Trustee for inclusion into the Trust for the benefit of Beneficiary shall be a sum sufficient to replenish the Trust to its original sum of SEVEN HUNDRED FIFTY THOUSAND AND No/100 ($750,000.00) DOLLARS. PROVIDED THAT On said anniversary dates the total funds within the Trust, as evidenced by the report of the Trustee made within thirty days of said anniversary years, is below the amount of FIVE HUNDRED THOUSAND AND No/100 ($500,000.00) DOLLARS.
In June of 1997, pursuant to the appropriation contained in Act 471 of 1997, the Treasury made a payment to the Trustee in the amount of $468,201, to supplement the Trust in accordance with the Compromise, to raise the balance of the Trust back to the required level. The payment was made as a result of the request of the Trustee in July of 1995, on the tenth anniversary date thereof.
By letter dated July 27, 1999, addressed to the Louisiana Department of Justice, the Trustee [now NationsBank] made the following statements and requests, to-wit:
 "This is to inform you and the State of Louisiana that the present value of the above referenced medical trust if $300,250.22. The Trust Agreement states that, "In the event such funds are below one-half million, then, in that event, grantor shall deposit a sum sufficient to replenish said Trust to a level of $750,000." I therefore request on behalf of Julius Hatcher that the State of Louisiana make a contribution in the amount of $449,749.78 to this medical trust.
 In the event the State of Louisiana is unwilling to part with that much money immediately, I request that $261,110.78 be contributed. In June 1997, the market value of this account was $20,688.22 and a request was made to replenish the Trust. However, instead of a contribution of $729,311.78 as what was called for by the terms of the Trust document, only $468,201 was contributed. The difference between what should have been contributed and what was contributed is $261,110.78."
This letter request was forwarded to the Treasury by your Office with a transmittal letter of Ms. V. Elaine Boyle Patin dated August 5, 1999. At that time, your Office also advised Treasury officers that you had information to the effect that Julius Carnell Hatcher, the Beneficiary had died.
By letter dated September 22, 1999, addressed to the Trustee, with a copy to your Office, the Treasury denied the request for replenishment of the Trust balance for the reason that no such replenishment would be due until the July 2000 anniversary date of the Trust and only at that time if the balance of the Trust was less than $750,000. The letter also advised the Trustee that the Treasury had been informed of Mr. Hatcher's death, which would cause the dissolution and liquidation of the Trust under its terms and provisions.
By letter dated December 23, 1999, addressed to the Treasurer, the Trustee [now Bank of America] advised of Mr. Hatcher's death on August 5, 1999. The letter also contained the following requests, to-wit:
 ". . . Per paragraph 8 of the document, `Upon dissolution of this Trust, the balance of trust funds shall be paid, pursuant to written instructions of the State of Louisiana, represented by the Attorney General, which shall provide, among other things, that all sums, corpus and interest, on deposit at date of dissolution, up to SEVEN HUNDRED FIFTY THOUSAND AND NO/100 ($750,000.00) DOLLARS shall be paid to the heirs, assigns, estate, designee or legal representative of Julius Hatcher". I respectfully request that the written instruction necessary for distribution to Mr. Hatcher's heirs, as provided for in the above quoted paragraph, be submitted to Bank of America.
 In addition, Mich. Hipe has contacted your office several times regarding $51,700.00 due to the trust. Since the payment due to the trust in July of 1995 was not made until June 27, 1997, accrued interest of the aforementioned amount is due. Please let me know where we stand in the process of obtaining these funds as soon as possible."
In response, by letter dated January 6, 2000, addressed to the Trustee, with copies to Ms. Patin and Mr. Bingham of your Office, the Treasury advised the Trustee that the request for "written instructions" was properly submitted to the Attorney General's Office pursuant to the provisions of the Trust and that the request was being forwarded to that Office. Additionally, the Trustee was informed that the request for interest payment was being considered and a request was made for information on how the interest payment amount was calculated. There has been some subsequent correspondence from the Trustee to the Treasury with regard to proper calculation on the requested interest payment amount.
Your first question is: Does the Treasurer need to take any further actions with respect to the death of the Beneficiary and the "written instructions" for dissolution and distribution of the Trust?
Generally, the Treasurer's duties are to disburse monies to the Trust; however, as you noted Section 8. of Article II, Duties of the Trustee, of the Trust provides that "Upon dissolution of this Trust, the balance of trust funds shall be paid, pursuant towritten instructions of the State of Louisiana, represented by the Attorney General. . ." (Emphasis added). We trust that your office would work with this office in computing the amounts due to both parties at dissolution of the Trust and communicating same to the Trustee in accordance with the provisions of Section 8.
Your second question is whether interest is owed on a payment such as the one made by the Treasury on June 27, 1997, as requested by the Trustee. Is the State legally obligated to pay interest on this June 27, 1997 payment as requested by the Trustee?
Yes. Under the terms of the Trust, the payment was due as of the tenth anniversary date; however, the payment was not made for approximately two years after the anniversary date. Civil Code Art. 2000 provides in pertinent part as follows:
 When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to provide any loss, and whatever loss he may have suffered he can recover no more . . .
Your third question is: if the State is so obligated to make the interest payment, what is the proper procedure and interest rates(s) to be used to calculate the interest payment?
As stated in C.C. Art. 2000, the State should pay legal interest from the date the payment was due.
Your fourth question is: And, if the State is so obligated to make the interest payment, is an appropriation by the legislature for the amount of the payment required before it can be paid by the Treasury?
We call your attention to Op.Atty.Gen. 85-949 which found that the monies appropriated for supplementing the Trust were not State funds but rather funds held in the custody of the Treasurer's Office. The $1,000,000 appropriated in Act 486 to the Treasury was appropriated in order to have funds available to supplement the Trust. Provided that there are sufficient monies remaining of the $1,000,000 to supplement the Trust, there is no need for an additional appropriation.
Your fifth question is: In view of the Beneficiary's death and the dissolution of the Trust, and consequently the State's obligation to supplement it, are the supplemental funds remaining in the Treasury freed up to go into the State's General Fund? If not, what other actions or steps must be taken for this to be accomplished?
After the final instructions and payments are given to the Trustee, the balance remaining in the Trust may be disbursed as provided in the Trust and the supplemental funds remaining in the custody of the Treasury may be deposited into the State's general fund.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH